UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| C. ROBERT SUESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-2126 (JMF) |
| | ) | |
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION, AS RECEIVER FOR | ) | |
| THE BENJ. FRANKLIN FEDERAL | ) | |
| SAVINGS AND LOAN ASSOCIATION | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This case was referred to me for all purposes including trial. Currently pending and ready for resolution are 1) Plaintiff C. Robert Suess' Motion for Summary Judgment and Supporting Memorandum of Points and Authorities [#10] ("Plains. MSJ") and 2) FDIC's Cross Motion for Summary Judgment and Memorandum of Points and Authorities [#11]. For the reasons stated below, plaintiff's motion will be denied and defendant's motion will be granted.

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

The following statement is premised on the summary of the pertinent facts contained in the Federal Circuit's decision in Suess v. United States, 535 F.3d 1348 (Fed. Cir. 2009) and in the Complaint for Relief ("Compl.") [#1].

1. Plaintiff, C. Robert Suess ("plaintiff" or "Suess"), is a resident of Eugene, Oregon, and a major shareholder of Benj. Franklin Federal Savings & Loan Association ("Benj. Franklin"), a bank based in Portland, Oregon.

2. Defendant is the Federal Deposit Insurance Corporation ("FDIC" or "the Receiver").

3. The FDIC was established under the Federal Deposit Insurance Act and is the primary federal regulator of state-chartered savings banks. 12 U.S.C. § 1821.[1]

4. In September 1982, Benj. Franklin merged with Equitable Savings and Loan and in July 1985, purchased Western Heritage Savings and Loan Association.

5. In return for acquiring the assets and liabilities of Equitable Savings and Loan, the FDIC and the Federal Savings and Loan Corporation ("FSLC") let Benj. Franklin carry $342 million dollars of "supervisory goodwill" as a capital asset to be amortized over a period of thirty-two years. Benj. Franklin received $6.8 million dollars in supervisory goodwill, to be amortized over a period of up to twenty-five years, as a result of acquiring the assets and liabilities of Western Heritage.

6. In late 1989, the Office of Thrift Supervision ("OTS") "promulgated final regulations implementing the requirement set forth in the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") that most of a thrift's contracted-for supervisory goodwill be excluded from its regulatory capital calculations." Compl. ¶ 1.

7. In February 1990, federal regulators seized Benj. Franklin due to its failure to satisfy the minimum regulatory capital requirements.

8. At that time, the Resolution Trust Corporation ("RTC") was appointed to serve as Benj. Franklin's Receiver during wind down and liquidation.

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

9. In September 1990, plaintiff and several other shareholders filed a lawsuit against the United States for breach of contract. See Suess v. United States, 33 Fed. Cl. 89, 92 (1995).

10. On December 31, 1995, the FDIC became the Receiver for Benj. Franklin when, by operation of statute, it succeeded to the rights and obligations of the RTC.

11. In the course of three separate decisions, the United States Court of Federal Claims held that the United States was liable for the breach of two contracts, one in reference to Benj. Franklin's merger with Equitable and the other in reference to its purchase of Western Heritage. See Suess, 535 F.3d at 1350.

12. On July 17, 2002, the Internal Revenue Service ("IRS") filed a complaint in the United States District Court for the District of Columbia against the FDIC, in its capacity as Receiver, seeking resolution of its Amended Proof of Claim for $1,077,768,461. Compl. ¶ 27; United States' Complaint for Judicial Determination of Tax Claims in FDIC Receivership Proceeding and to Reduce Income Tax Assessments to Judgment [#1], United States v. FDIC, No. 02-CIV-1429 (D.D.C. 2002). The matter was assigned to the Honorable Emmet G. Sullivan, Associate Judge of this Court.

13. On December 13, 2006, the shareholders were awarded a final judgment of $52,008,750 by the Court of Federal Claims, payable to the FDIC in its capacity as Receiver. Suess, 535 F.3d at 1348.

14. In United States v. FDIC, Judge Sullivan approved a settlement under which, *inter alia*, the FDIC, as Receiver, would pay $50 million in taxes due for the calendar years 1990-2002 and plaintiff and the other shareholders would be reimbursed in full for the

| | attorney's fees and costs expended in both the Court of Federal Claims and in the matter before Judge Sullivan.  See United States v. FDIC at [#33] (agreement attached to Order approving settlement).  That reimbursement was paid in full. |
|---|---|
| 15. | The United States then appealed the judgment, arguing that the trial court erred in finding that Benj. Franklin entered into any valid contract with the United States regarding the bank's acquisition of Equitable in 1982. |
| 16. | On August 7, 2008, the United States Court of Appeals for the Federal Circuit reversed the lower court's ruling as to Equitable. Suess, 535 F.3d at 1367.  The court also remanded the case to the Court of Federal Claims "so that it may determine what damages, if any, are necessary to compensate [Benj] Franklin for its losses associated solely with the government's breach of contract associated with the Franklin-Western transaction." Id. |
| 17. | On December 31, 2008, plaintiff submitted a proof of claim to the Receiver seeking reimbursement for the attorney's fees and costs expended on the appeal. Plains. MSJ at Ex. 6. |
| 18. | On April 22, 2009, plaintiff, through his attorney, Thomas M. Buchanan, sent a letter to Richard Gill of the FDIC. Plains. MSJ at Ex. 9.  In the letter, plaintiff argues that he should be reimbursed for the attorney's fees and costs he incurred defending against the government's appeal because the FDIC would otherwise have had to do it and pay for it from Benj. Franklin surplus funds. Id. |
| 19. | On September 15, 2009, the Receiver denied the $470,754.33 petition in its entirety. Plains. MSJ at Ex. 7.  According to the Receiver, plaintiff did not provide "a valid basis |

for the reimbursement of attorney's fees and costs in connection with an unsuccessful appeal that reversed a judgment." Plains. MSJ at Ex. 7.

## CONCLUSIONS OF LAW

I.  Standard of Review

Under FIRREA, a claimant may file suit in the United States District Court for the District of Columbia. 12 U.S.C. § 1821(d)(6)(A)(ii). "FIRREA divests Article III courts of subject matter jurisdiction over claims presented to the [FDIC] until the claimant has exhausted administrative remedies" and "[s]ection 1821(d)(13)(D) limits the jurisdiction of district courts to de novo review . . ." Orchard Hills Coop. Apartments, Inc. v. RTC, 779 F. Supp. 104, 106-07 (C.D. Ill. 1991). Accord Winston & Strawn LLP v. FDIC, No. 06-CIV-1120, 2007 WL 2059769, at *3 (D.D.C. July 13, 2007) ("[T]his Court reviews *de novo* claims filed with, and processed by, the FDIC under its administrative claims process.") (emphasis in original); Nants v. FDIC, 864 F. Supp. 1211, 1217 (S.D. Fl. 1994) ("The judicial proceeding contemplated by FIRREA consists of a *de novo* determination of [plaintiff's] claim for unpaid fees and costs, arising from his contract . . . not a review of the FDIC's disallowance of the claim.") (emphasis in original).[2]

II. Standard for Summary Judgment

Both parties' motions for summary judgment are made pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

---

[2] At one point I questioned this Court's jurisdiction over the subject matter, but based on the parties' submissions, I am convinced that this Court has jurisdiction over an action against the FDIC in its capacity as receiver. See 12 U.S.C. § 1819(a).

5

genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt, 532 F. Supp. 2d 121, 122 (D.D.C. 2008).

III. Analysis

As noted above, in February 1990, after the OTS implemented the FIRREA regulations that excluded a thrift's contracted-for supervisory goodwill from the calculation of its regulatory capitol, federal regulators seized Benj. Franklin due to its failure to satisfy the minimum regulatory capital requirements. Shortly thereafter, in September 1990, plaintiff and several other shareholders filed a lawsuit, in the Court of Federal Claims, against the United States for breach of contract. Ultimately, in November 1998, that court held that the United States was liable for the breach of two contracts.

In the meantime, the IRS filed a complaint against the Receiver seeking action on a Proof of Claim for over one billion dollars. The IRS and the Receiver ultimately settled that claim. As part of that settlement, the Receiver agreed to reimburse plaintiff and the other shareholders for the attorney's fees and costs expended both at trial in the Court of Federal Claims and in defense of the tax claim in District Court.

    A.    The Receiver Did Not Breach Any Duty it had to Plaintiff and the Other Shareholders

        1.    The Receiver Did Not Agree to Reimburse Plaintiff for His Representation of the Shareholders Before the United States Court of Appeals for the Federal Circuit

With respect to the proceedings before the Federal Circuit, it is conceded that there was no express agreement between the parties relating to the reimbursement of plaintiff's attorney's

fees and costs. In the absence of an express agreement pertaining to attorney's fees in the Federal Circuit, that plaintiff and the other shareholders were reimbursed for their previous efforts as part of a settlement agreement does not mean that plaintiff has an automatic right to claim reimbursement in this case.

### 2. The Receiver Did Not Breach Either a Fiduciary or Statutory Obligation to the Shareholders

Under FIRREA, the role of the FDIC, as Receiver, is defined as follows:

> The Corporation shall, as conservator or receiver, and by operation of law; succeed to - -
>
> (i) all rights, titles, powers, and privileges of the insured depository regulatory institution, and of any stockholder, member, account holder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution . . .

12 U.S.C. § 1821(d)(2)(A).

In addition, the FDIC may perform the following tasks:

> (i) take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;
> (ii) collect all obligations and money due the institution;
> (iii) perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and
> (iv) preserve and conserve the assets and property of such institution.

12 U.S.C. § 1821(d)(6)(B). As Receiver, therefore, the FDIC has a statutory responsibility to Benj. Franklin's shareholders.

In addition, as Receiver, the FDIC also has a fiduciary responsibility to its shareholders. See Golden Pacific Bancorp. v. FDIC, 375 F.3d 196, 201 (2d Cir. 2004) ("It is undisputed that,

7

as receiver, the FDIC owes a fiduciary duty to the [corporation's] creditors and to [the corporation].").

Plaintiff's first argument is that the FDIC, as Receiver of Benj. Franklin, breached both its statutory and fiduciary obligations to plaintiff and the other shareholders by failing to defend their interests in the proceedings before the court of appeals. Plains. Mot. at 7. Plaintiff contends, therefore, that he is entitled to reasonable attorney's fees because he did what the Receiver should have done. Id.

"[A]s a general proposition, the FDIC's statutory receivership authority includes the right to control the prosecution of legal claims on behalf of the insured depository institution now in its receivership." First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1295 (Fed. Cir. 1999). Accord Hickey v. NCNB Texas Nat. Bank, 763 F. Supp. 896, 899 (N.D. Tex. 1991) (as receiver, the FDIC has the affirmative duty to defend the failed bank); Peoples' Sav. and Loan Ass'n v. First Federal Sav. and Loan Ass'n, 677 F. Supp. 1104, 1108 (D. Kan. 1988) ("[T]he FDIC . . . in its capacity as receiver, willingly defends or asserts claims against receivership assets in court.") (internal citations omitted).

Plaintiff's argument, however, is without merit. The Receiver *did* represent the shareholders' interests in the court of appeals. Although plaintiff contends that he took the lead on appeal, and the Receiver concedes the point,[3] the fact remains that the Receiver entered its appearance before the court of appeals and, in conjunction with plaintiff, ensured that the

---

[3] See Plains. Mot., Exhibit 12 at 1, n.1 ("The other issues in this appeal are appropriately stated and addressed by Plaintiffs-Cross Appellants Suess, et al. The FDIC is satisfied with their statement of those issues as well as their statements of jurisdiction, the case, the facts, and the standard of review; therefore, the FDIC does not include such statements here. Fed. R. App. P. 28.1(c)(2).").

8

shareholders' interests were represented. It is inaccurate for Suess to portray himself as fulfilling a responsibility that the FDIC abdicated by virtue of not filing a brief on appeal. While the RTC may not have initially responded to Suess' demand that it sue the United States,[4] the FDIC participated in the appeal as a party. As the FDIC indicated to the Federal Circuit, it was content with the arguments Suess made except for one, which it addressed in its own brief.[5] The FDIC was under no obligation to bore the Federal Circuit by repeating verbatim the arguments Suess made, nor was it under any obligation to risk owing Suess over $400,000 in legal fees because the FDIC did not run Suess' brief on appeal though a xerox machine and sign its name to it.

In any event, the real issue is not whether the Receiver breached any duty it had to plaintiff and the other shareholders, but whether plaintiff is entitled to be reimbursed for his contribution to the Receiver's fulfillment of those duties. To secure such reimbursement, plaintiff must establish that there is a legal theory, supported by precedent, that requires such reimbursement.

Here, we have to begin with the premise that the American Rule prevails in this and all other jurisdictions, meaning that a party pays its own attorney's fees unless some recognized exception applies. See Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1265 (D.C. Cir. 1993). The only ones available are the common fund theory and its legal child, the award of fees to a stockholder for the corporation's behalf in a derivative action. Of course, Suess is also entitled to fees despite any such theory if he and his fellow shareholders had a contract with FDIC or if,

---

[4] See Suess 33 Fed. Cl. at 97.

[5] See Plains. Mot., Exhibit 12.

9

despite the absence of a contract, a court imputes one in order to prevent the FDIC from being unjustly enriched.[6] I now turn to each of these legal theories.

      B.      <u>Plaintiff is Not Otherwise Entitled to Reimbursement</u>

           1.      <u>Common Fund Analysis</u>

This Circuit permits "a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." <u>Swedish Hosp. Corp.</u>, 1 F.3d at 1265. This policy is animated by two concerns. The first "is that unless the costs of litigation are spread to the beneficiaries of the fund they will be unjustly enriched by the attorney's efforts." <u>Id.</u> The second is to motivate lawyers to undertake representation of worthy causes that would not otherwise attract competent counsel. <u>Consol. Edison Co. v. Bodman</u>, 445 F.3d 438, 443 (D.C. Cir. 2006).

As to the latter, the court of appeals, in language that is prescient in its application to this case, noted that if lawyers already have sufficient motivation from their expected compensation from the clients they represent, there is no need to provide the additional motivation of recovery from any common fund their actions may create:

> We note by way of background that the common fund theory conventionally rests on a theory that beneficiaries of the lawsuit would be unjustly enriched if not compelled to pay a share of the fees that made success possible. See, e.g., <u>Swedish Hospital v. Shalala</u>, 1 F.3d 1261, 1265 (D.C. Cir.1993). It may well be that courts have found it sensible to apply the unjust enrichment principle here (after all, human life abounds in windfalls) because doing so answers a potential free-rider problem. See <u>Wal-Mart Stores Health & Welfare Plan v. Wells</u>, 213 F.3d 398, 402 (7th Cir.2000) (noting that free riding on attorney's efforts would be

---

[6] Note that the latter two cannot coexist. One cannot prevail on the same facts upon a claim of an implied in fact contract and a claim that a contract must be imputed in order to prevent unjust enrichment. <u>Plesha v. Ferguson</u>, 725 F. Supp. 2d 106, 111 (D.D.C. 2010).

> "contrary to the equitable concept of 'common fund' "); cf. United States v. Tobias, 935 F.2d 666, 668 (4th Cir. 1991) ("Generally, a fund claimant who is represented by counsel . . . is deemed not to have taken a 'free ride' on the efforts of another's counsel."); John P. Dawson, Lawyers and Involuntary Clients: Attorney Fees from Funds, 87 Harv. L. Rev... 1597, 1647-51 (1974) (discussing incentives to free ride on attorneys' efforts). If lawyers considering representation of some but not all of a cluster of beneficiaries can recover compensation only from beneficiaries who actively retain them, claims will not be brought-even though meritorious-where the expected value of the gains for beneficiaries willing to participate can't generate adequate compensation for counsel (and thus enable the bringing of suit). Under a rule awarding fees out of litigation proceeds received by passive beneficiaries, lawyers' anticipation of fee recoveries will provide the requisite incentive. In some cases, of course, a subset of potential beneficiaries will have stakes large enough to call forth ample litigation effort; if so, the free-rider concern declines, possibly to nil. This last point would be pertinent, if at all, in calculation of fees.

Id. at 442-43.

In this case, there was surely a "subset of potential beneficiaries" with "stakes large enough to call forth ample litigation effort." Suess was the largest shareholder and the greatest potential beneficiary of a $52,008,750 judgment. It is absurd to suggest that he would have lacked sufficient motivation to defend that judgment if he could not have reasonably expected that the FDIC would pay the fees he incurred to defend against the government's appeal. Nor can one possibly find any concern about free riders who would benefit from his work when he stood to get the lion's share of the judgment he was defending. With any concern about motivation or unfairness of a free ride obviated, Suess's claim for compensation for his work on the losing appeal never breaks from the gate.

Second, *sine qua non* to recovery from a common fund is the creation of that fund from the lawyer's efforts. Abbott, Puller & Myers v. Peyser, 124 F.2d 524, 525 (D.C. Cir. 1941);

11

Geiger v. Peyser, 123 F.2d 167, 168 (D.C. Cir. 1941); Kalodner v. Bodman, 241 F.R.D. 6, 10 (D.D.C. 2006); Wienberg v. Goldenberg's Inc., 81 F. Supp. 353, 353 (D.D.C. 1948); Lett v. City of St. Louis, 24 S.W.3d 157, 162 (Mo. Ct. App. 2000). As these cases teach, if the battle is instead one between adversaries over a fund that was already in existence, the common fund theory does not apply, and the case defaults to the ordinary rule that each party pays its own fees and costs.

In other words, the lawyer's efforts must either cause the fund to come into creation or, once in creation and in control of the court, her efforts must keep it from being diminished. Hence the emphasis by the court in Consolidated Edison on the claiming party's showing that it played "a causal role in achieving the benefits for which they seek reimbursement,"[7] meaning that it must show that its work was the cause in fact of the creation or preservation of the fund or that, but for its action, the fund would not have been created or preserved.

Likewise, in Thomas v. Peyser, 118 F.2d 369 (D.C. Cir. 1941), the court held that the appellants, attorneys who sought reimbursement of fees under a common fund theory, were not so entitled because their efforts to protect a piece of real property held in receivership were ultimately unsuccessful. Describing the common fund theory, the court stated that "[i]t is well settled that if one who has an interest in a common fund brings a *successful* suit to preserve, protect, or increase that fund, or if he creates or brings to court a fund in which others may share with him, he is entitled to an allowance of counsel fees to be paid out of the fund." Id. at 370 (internal citations omitted) (emphasis added).

---

[7] Consol. Edison, 445 F.3d at 372-73.

Here, while Suess's efforts in the Court of Federal Claims resulted in a $55 million judgment, his efforts in the appellate court neither created a new fund nor preserved the one that was in existence. Simply put, his efforts in the Federal Circuit added neither a jot nor a tittle to the money available to the Benj. Franklin stockholders, including himself. Since there is no legal authority whatsoever for a deviation from the ordinary rule, he and his fellow plaintiffs must pay their own fees.

2. Derivative Action Analysis

I appreciate that when Suess' standing was attacked in the Court of Federal Claims by the United States, that court held that Suess and his fellow shareholders could press a derivative action on behalf of Benj. Franklin but that they lacked standing to press individual claims. See Suess, 33 Fed. Cl. at 93-94. I also appreciate that the Supreme Court has stated the following:

> Other cases have departed further from the traditional metes and bounds of the [common fund] doctrine, to permit reimbursement in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them. This development has been most pronounced, in shareholders' derivative actions, where the courts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money recovery has been obtained in the corporation's favor. For example, awards have been sustained in suits by stockholders complaining that shares of their corporation had been issued wrongfully for an inadequate consideration. A successful suit of this type, resulting in cancellation of the shares, does not bring a fund into court or add to the assets of the corporation, but it does benefit the holders of the remaining shares by enhancing their value. Similarly, holders of voting trust certificates have been allowed reimbursement of their expenses from the corporation where they succeeded in terminating the voting trust and obtaining for all certificate holders

13

> the right to vote their shares. In these cases there was a 'common fund' only in the sense that the court's jurisdiction over the corporation as nominal defendant made it possible to assess fees against all of the shareholders through an award against the corporation.

Mills v. Electric Auto-Lite Co., 396 U.S. 375, 394-95 (1970).

But, in Mills, the Supreme Court spoke of successful suits that benefitted the stockholders. Once again, Suess's efforts on appeal were of no benefit to the Benjamin Franklin stockholders nor to the FDIC in its capacity as Receiver. The law is clear: "A plaintiff should not receive a fee in derivative litigation unless the corporation, by judgment or settlement, receives some of the benefit sought in the litigation or obtains relief on a significant claim in the litigation." Zucker v. Westinghouse Elec. Corp., 265 F.3d 171, 176 (3d Cir. 2001). Accord: In re Schering-Plough Corp. Shareholders Derivative Litig., No. 01-CIV-1412, 2008 WL 185809, at *1 (D.N.J. Jan. 14, 2008) (under Supreme Court decision in Mills, corporation must receive substantial benefit from a derivative suit); Laprade v. Blackrock Fin. Mgmt., Inc., No. 99-CIV-9288, 2002 WL 31499244, at *5 (S.D.N.Y. 2002) (same). Success in achieving that benefit in the derivative action is crucial. Henss v. Schneider, 132 F. Supp. 60, 63 (S.D.N.Y. 1955) ( if derivative corporate claim fails, claims for attorney's fees fails with it); Gottlieb v. Heyden Chem. Corp., 105 A.2d 461 (Del. 1954) (same); Eriksson v. Boynum, 184 N.W. 961 (Minn. 1921) (same).

This principle is analogous to the law in this circuit that a party who seeks recovery from a common fund must prove that his efforts created a fund from which others will benefit, thereby justifying his being reimbursed some fair share of the fees for securing it. Suess' unsuccessful

efforts on appeal benefitted no one and therefore he cannot possibly qualify for reimbursement of his attorney's fees and costs.

Finally, Suess insists that he provided his fellow stockholders, represented by the FDIC in its role as Receiver, with the benefit of a voice during the unsuccessful appeal. See Plaintiff C. Robert Suess' Opposition to FDIC's Cross Motion for Summary Judgment ("Plains. Opp.') [#12] at 3. He expressly relies on cases that stand for the proposition that rendering a substantial benefit to others through a derivative or class action may justify awarding attorney's fees to prevent a free ride to those who benefitted, whether stockholders or not, even if the benefit was not pecuniary.[8] Here, however, there was no benefit whatsoever conferred on his fellow stockholders or the FDIC, let alone one that can be described as substantial. Indeed, if Suess were to prevail, it would be the first instance in American legal history where an unsuccessful litigant, one who conferred absolutely no benefit on another person or entity, was permitted to recover attorney's fees from that entity. There is no warrant in precedent or common sense for such a remarkable conclusion.

Since the only possible exceptions to the American rule are unavailable, Suess can prevail only if he can premise liability on an implied contract between himself and the FDIC or on a so called "quasi-contract," where a court will impute to the FDIC an obligation to pay the fees.

---

[8] I note that Suess relies on Lewis v. Anderson, 692 F.2d 1267 (9th Cir. 1982) for the proposition that "the exercise of important shareholder rights, even if they do not result in monetary benefits, justifies an award of attorneys fees." Plains. Opp. at 3. In fact, in that case, the court held that the derivative action had yielded a benefit that justified the awarding of attorney's fees. See Lewis, 692 F.2d at 1271. If merely "providing a voice" to stockholders justified an award of attorney's fees to those stockholders, every derivative action would *always* yield such an award, rendering the "substantial benefit" requirement imposed by the Mills case a nullity.

### 3. There Was No Implied-In-Fact Contract Between Plaintiff and the Receiver

Next, plaintiff argues that there was an implied-in-fact contract between the parties, citing the following factors identified in Bloomgarden v. Coyer, 479 F.2d 201 (D.C. Cir. 1973):

> It is well settled that, in order to establish an implied-in-fact contract to pay for services, the party seeking payment must show (1) that the services were carried out under such circumstances as to give the recipient reason to understand (a) that they were performed for him and not for some other person, and (b) that they were not rendered gratuitously, but with the expectation of compensation from the recipient; and (2) that the services were beneficial to the recipient.

Id. at 208-09.

If the parties dispute the material facts related to the existence of a contract, that dispute requires the finder of fact to determine what disputed facts are true. This is nothing more than the application of the principle that the existence of a genuine issue of material fact defeats a motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Pitney Bowes, Inc. v. U.S. Postal Serv., 27 F. Supp. 2d 15, 23-24 (D.D.C. 1998). But, if there is no dispute as to what occurred between the parties, then whether the agreed facts brought an enforceable contract into existence is a question of law for the court. Bus. Sys. Eng'g, Inc. v. IBM Corp., 547 F.3d 882, 887 n.2 (7th Cir. 2008); Eastbanc, Inc. v. Georgetown Park Assocs. II, LP, 940 A.2d 996, 1002 (D.C. 2008). See also 1st Home Liquidating Trust v. United States, 581 F.3d 1350, 1355 (Fed. Cir. 2009) (whether contract exists is mixed question of law and fact, but determination by lower court that contract existed was reviewed de novo as a matter of law when summary judgment was granted).

The only fact upon which Suess relies in support of his contention that there exists an implied in fact contract is a provision in the settlement agreement approved by Judge Sullivan, in which the FDIC agreed to pay the attorney's fees and costs incurred by Suess in the Court of Federal Claims and in the matter before Judge Sullivan. From this, Suess claims a contractual right to be similarly reimbursed for the costs of appeal.

First, the matter before Judge Sullivan was resolved by a written agreement that was made a part of Judge Sullivan's Order. See United States v. FDIC, Civil Action No. 02-1427 at [#33]. There is nothing in that agreement, however, that speaks to whether Suess would be reimbursed for fees and costs in defending the Court of Federal Claims' judgment in the Federal Circuit. It is neither fair, just, nor reasonable to infer from that integrated written document a promise to pay the fees incurred in the appeal by invoking a principle of law that only pertains to a situation where the parties do not have a written agreement and it is therefore necessary to deduce their intent from their actions alone.

Second, one cannot infer from the FDIC's payment of attorney's fees for the lower court work, pursuant to a comprehensive settlement, that the FDIC should have expected to also reimburse Suess for his defense of the judgment in the Federal Circuit. All the FDIC could have reasonably expected was that Suess, having secured a substantial judgement in the Court of Federal Claims, was (to put it mildly) more likely than not to defend that judgment aggressively to preserve the substantial judgment he and his fellow stockholders had been awarded. From those facts and the parties' silence about who would pay the costs of the appeal, one cannot infer that the FDIC agreed to bear those costs. To find a contract between the parties on such a gossamer basis is to convert a gratuitous assumption into a contract.

4. <u>Plaintiff Is Not Entitled to an Award Based on Unjust Enrichment</u>

"A quasi-contract . . . is not a contract at all, but a duty thrust under certain conditions upon a party to requite another to avoid the former's unjust enrichment." <u>Bloomgarden v. Coyer</u>, 479 F.2d at 208. In order to obtain restitution, plaintiff must prove not only that he has conferred some benefit or advantage on the Receiver but also that it would be unjust not to order reimbursement. <u>See id.</u> at 211. "Unjust enrichment occurs when 1) the plaintiff conferred a benefit on the defendant; 2) the defendant retained the benefit; and 3) under the circumstances, the defendant's retention of the benefit is unjust." <u>McWilliams Ballard, Inc. v. Level 2 Dev.</u>, 697 F. Supp. 2d 101, 106 (D.D.C. 2010) (internal citations omitted). It further "depends on whether it is fair and just for the recipient to retain the benefit, not on whether the person or persons who bestowed the benefit had any duty to do so." <u>4934, Inc. v. D.C. Dep't of Emp't Servs.</u>, 605 A.2d 50, 56 (D.C. 1992). Finally, "a promise to pay will be implied in law when the party renders valuable services that the other party knowingly and voluntarily accepts." <u>Brown v. Brown</u>, 524 A.2d 1184, 1186 (D.C. 1987).

As explained above, in 1996, the Court of Federal Claims held that the government had breached two contracts with plaintiffs. <u>See</u> <u>Suess v. United States</u>, 535 F.3d at 1356. The United States, however, only appealed the decision as to one of those contracts. <u>Id.</u> Thus, the only issue before the Federal Circuit was whether the trial court's decision that there existed a contract between Franklin and the government with respect to the treatment of goodwill arising out of Franklin's acquisition of Equitable was erroneous. <u>Id.</u> In reversing the trial court's determination, the Federal Circuit ruled completely in the government's favor. Plaintiff, therefore, cannot argue that he successfully defended the government's appeal or that he

conferred any benefit on the FDIC. If no benefit was conferred, the FDIC was not enriched, and plaintiff is not entitled to reimbursement of attorney's fees.

Plaintiff would counter that, even if unsuccessful, the FDIC got the benefit of his services for which it should now pay. But, as I have previously explained, plaintiff had a powerful financial motivation to defend the judgment and unquestionably exerted substantial efforts to preserve it. The FDIC, having read plaintiff's brief, accepted the validity of the arguments and so advised the Federal Circuit. Although plaintiff and the FDIC did not prevail, there is no basis from those facts to describe the FDIC as retaining a benefit that it must now disgorge in the same sense as a person who was, for example, paid money by mistake. It would appear fundamental that the enrichment is unjust only when the party who has conferred the benefit acted either graciously or altruistically without an obvious, personal motivation to do what he did. In such a situation, permitting the party who received that benefit to retain it may be unfair or unjust. When the party conferring the benefit has an obvious, self-serving motivation to perform the action that may have benefitted the other party, it is hard to describe the result to be unfair when the party conferring the benefit had at least as much if not more to gain from the efforts she expended. That situation hardly warrants my taking the fees that Suess incurred and shifting them to the FDIC when Suess had as much interest in winning the appeal as did the FDIC.

Moreover, accepting Suess' position means that, under the guise of preventing an unjust enrichment, the courts would have to force one party to pay another party's legal fees when both of them were on the same side of a case that was unsuccessful, based on the court's perception of who did more. The amount of time spent by the court doing that, at the taxpayers' expense, is

hardly justified when, as was true here, the parties were perfectly free to negotiate a division of the work prior to its undertaking.

## CONCLUSION

Plaintiff has failed to establish 1) that there was an express agreement, 2) that the Receiver breached any fiduciary or statutory obligation to the shareholders, 3) that there was an implied-in-fact agreement, or 4) that there should be implied was a quasi-contract between the parties regarding the reimbursement of attorney's fees incurred by plaintiff in defense of the government's appeal. Plaintiff therefore is not entitled to any compensation for those efforts.

An Order, granting the FDIC's motion for summary judgment and directing the Clerk to enter judgment in its favor, accompanies this Memorandum Opinion.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE